Your Honor, I ask to reserve five minutes for rebuttal after Mr. Smoot makes his argument. This was a case regarding allegations of aggravated abuse of a minor and abuse of a minor in this particular case. I'm sure that the court's aware of all the facts. I don't want to spend a lot of time regarding the facts, but EA, NB, and KA were the the three minors involved in this particular case. And all three of them testified during the trial that the touching that occurred was over the clothes in some fashion or the other. And what we believe the violations are in this case go primarily around the aggravated abuse of a minor and the sexual act. First off, when all three of those children made denials of any touching under the clothes, the government called the forensic interviewer, who is a FBI MSW, who testified that inconsistent with what the children had testified, and at the time of the trial that they told her that the touching was under the clothes or skin-to-skin contact, which was inconsistent with the testimony that occurred at the trial. Additionally, Dr. Mary Shaw testified that in her interview with one of the children that there was touching alleged to have occurred under the skin, on the skin also. So as I understand it, counsel, there was an objection made, but it was a confrontation objection, right? I, my objection was under the, I believe I stated under the Confrontation Clause and the Sixth Amendment Clause, the Sixth Amendment. So under the I don't know why we really have a whole lot to say about the Confrontation Clause. Well, part of the, part of the issue goes to, there was also argument under 80, excuse me, under 801 that it should be admitted, and that was an argument that was made at different, at a different phase in the case, prior to the argument coming in. But, but, but I guess my biggest problem about all that is, based on my review of the record and based on the objection, it seems as if the only thing I can really talk about as to this objection might be the Confrontation Clause based on the objection given. Well, I believe that the 80, excuse me, addressed the, the 80. What clause would, or what law would I look to to get to the chance to look at this other than under the Confrontation Clause? The, the cases that we cited in the briefing were U.S. versus Colicott, and U.S. versus. Are they cases which say when an objection isn't made under that Confrontation Clause that I could nonetheless address that, that issue? Well. Because I don't think they are. Well, I, I think part of the argument here is that it's not just that one violation, but the, the numerous violations that come together in this particular case to allow us to argue it. One is that we had argued. Oh, I'm sorry. Sorry to interrupt. Did you try the case? I did, Your Honor. Did you object to the introduction of the agent's testimony? I, I believe I did, Your Honor. I, it's been a little bit while since I, I briefed this and since I tried this case. But it was my memory that I did object to the agent's testimony. Did you object specifically on the basis that what, allowing the agent's testimony contradicted the live testimony of the victims? I, I believe that the agent testified prior to the, to the. Listen to the question. Okay. Did you object on the basis that allowing the agent's testimony produced evidence which was inconsistent with the victim's live testimony? No, I didn't because the agent testified, it's my recollection, the agent testified early in the case before the, the children testified. At some point, did you ask the trial court to exclude the agent's testimony on the basis it was inconsistent with what the victims had said in their, in their live testimony? I, I can't say that I, I would have to review, but I don't believe I did, Your Honor. Okay, then how can we I, I think the court can address it as plain error and, and additionally, Your Honor, again, I think it could be addressed under the rule, the arguments under 801 and the, the combined errors that we allege occur in this particular case. The heart of the, the case really, isn't it? I mean, it's a, the question is, if the agent's testimony is allowed, then there's substantial evidence supporting the aggravated counts. If it's disallowed, then it's not there. Well, we did argue that the agent's testimony should not come, well, we argued, first off, that if the agent's testimony was going to come in, that we should be able to also elicit the statements that were made to, by the testimony of the agent, that all of the contact that occurred was over the close. And the court did not allow us to bring in that testimony because the court deemed that to be self-serving testimony and did not allow us to elicit from the agent the statements of Mr. Gonzales that he, all the touching occurred over the close. So, we argued in our brief that that was a denial of the right of confrontation to not allow us to question the agent about the additional statements that Mr. Gonzales made that, that he, all of his touching occurred over the close. So, is your argument here on appeal? Yes. That the district court erred by not allowing you to ask the agent about out-of-court statements by the victims? Well, that's part of it, yes. That we were denied the right of confrontation in questioning the agent first. Sounds like a yes. That is. All right. Did you also object on the basis, after the victims testified live and, and testified to over-clothing touching, did you then move to exclude the agent's testimony? I, I did not at that time. Okay. But I did object to the testimony of both Dr. Shaw and the forensic interviewer, Ms. Knapp, which were both allowed to come in saying that there was skin-to-skin contact. That was, that that was contrary to the testimony of the victims where they said that they were only touched over the close. Why didn't your testimony, or your cross-examination of K.A. suggest that K.A. was acting under improper influence or motive to fabricate? Well, quite, my, my interpretation of that cross-examination was that, that there had, that there had been testimony in practice there in the courtroom. Right. Saying, suggesting, I mean, it seemed to me that your cross-exam was, you've been in the courtroom before, you practiced your testimony before, when you said you forgot, you really meant you forgot what you were told to say during the practice, which all seems to indicate that there is an improper influence or motive to fabricate, which would be a reason, if I read 801 D 1 B I correctly, to allow that statement. Well, I, what I was trying to do with the witnesses, you have to be very careful, because they're not always clear in what they mean, and we don't always know what we, what they mean on the question that was asked. So I was merely trying to clarify what she meant when she said, I forgot. And, and so. That doesn't really seem exactly that when you say something like, when you say you forgot, means you forgot what you were told to say during the practice in the courtroom previously. That looks like you're really challenging, if you will, her, maybe she has a motive to fabricate, maybe she's been told what to say, maybe she's acting under improper influence, which, if I read 801 D 1 B I, that is too, that's the exact reason you would let those witnesses in. But, but the other part of that analysis under Colicott is that the testimony of the child victim, or whoever they're trying to rebut, had to be consistent with the hearsay testimony that you're then trying to bring in. There's no question, if there's, under three, when a declarant offers a prior consistent statement that is consistent, that's one way to let it in. But there is also, under two, when there's an express or implied charge of recent fabrication or improper influence or motive, which is a different alternative for letting it in, as I understand. I agree that the way I understand that rule to be is that all four of those must be present. The, first off, they have to have that allegation of hearsay statement must be consistent with the, the in-court statement, which is not the case that we have here. There was, there was not that consistent statement. Counsel, when you're done responding to Judge Smith, I have one question for you. And I realize we're into the time you wanted for rebuttal, but I'll, I'll give you a few extra minutes on rebuttal. What I'd like to know is this. Isn't, apart from what the social worker testified as to what the girl said to her, wasn't there an agent who said that your client admitted, at least on one count, to touching one of the girls under their clothes? That's, and I think that's correct. There was that statement by the agent as to one of the counts, at least. But again, we weren't allowed the opportunity to ask that agent in cross-examination about the additional statements that my client made that he didn't touch them over the clothes. But I didn't recall that issue being argued in the opening brief. That's about the admission, the alleged admissions. But not being allowed to ask that agent about other statements. I, I, it's not, it's not addressed as an individual issue, but it is addressed in the issue, in the argument regarding the issue of the confrontation clause. I think that we've, we did include it in there. All right. It's addressed in what way? It's. It. It's addressed as a part of the background. Part of the background of the confrontation. It's not stated in the briefs as an issue. It's not addressed as. So at least I'm not seeing any issue raised that would, would permit us to strike that testimony, which normally would come in, or to say it was wrong to admit that, which would normally come in as an admission. So, if that's true then, would your client be definitely convicted on that? On that one count? Well, I think not, because I think that there was in the statement of K.A., where there was, I think the, the last count on K.A., there was also a claim by the agent in there that Mr. Gonzalez admitted, I think, touching on the skin, the skin there. And that allegate, that comes in where he says that he demonstrated somehow or other the way he moved his fingers, I think. The, the agent said that he demonstrated somehow or other that he moved his fingers in a certain fashion. And he said that with regards to one of the counts where the jury found him not guilty. Okay. Well, thank you. Thank you. We have three minutes for like an unobstructed rebuttal unless you're obstructed by one of the other judges. All right. I appreciate it. Thank you. Mr. Smoot. Good morning, Your Honors. May it please the Court. Russ Smoot for the United States. I would indicate that I know that the Court asked Mr. Phelps if he was trial counsel. I was not trial counsel on this, but I am familiar with the case and the three issues that were presented. But if the Court has specific questions, I'm prepared to go into those right away. Sure. Why don't we start with this. The agent is on the stand recounting what the victim told the agent. And the defense counsel wants to cross-examine to bring out statements of the victim to the agent inconsistent with the live testimony of the agent. Have I stated it correctly? Well, I think if my recollection, at least in review of the briefs and review of the transcript, in that the FBI agent's testimony as to the confession of the defendant. At least in the brief, the defendant indicates that while the government was able to bring out the confession, it was not able to bring out what was described as self-serving statements by the defendant. We may be talking about a different stream. Tell me if this is what I'm about to describe is accurate. The agent is on the stand describing what the victim, one or more of the victims, told the agent. And on cross-examination, defense counsel wants to bring out statements made during those interviews that is inconsistent with what the agent testified to on direct. Do I have that right? Your co-counsel is nodding his head yes. Is that right? Your Honor, I cannot tell you with absolute certainty concerning the cross-examination. Let's assume that's what happened. Okay. How's that not error? I mean, I'm the defense attorney and I've got an agent on the stand who says when I interviewed the victim, the victim told me one, two, three. I get up to cross-examine and say isn't it true that the victim also told you during those same interviews not one, two, three. And the trial judge, and there's an objection from the government, and the trial judge says sustain. You can't go into that. That would be self-serving. Tell me what's right about that. Well, first, Your Honor, the statements that the victims had already been on the stand and could have been and were elicited directly as to what they said. Is that possibly relevant to the question I just asked you? On what basis do you allow an agent to come on the stand and introduce hearsay based on an interview of the victims of this this crime and not allow the defense attorney to ask whether there were statements by those very victims inconsistent with what the agent has just testified to on direct? Your Honor, I believe that they would be able to ask concerning statements made. If the agent or the examiner is making statements concerning inconsistent statements or consistent prior statements, then the defense would have the ability to go into that range of questioning. Isn't what I just described what happened? Not from my review of the record. From my review of the record, the objection was that my review of the record was that the questioning was the objection was to hear say of the forensics examiner saying providing any testimony at all concerning what was stated. And my review of the record was that that was not specifically raised as an issue in terms of, well, we didn't get to ask this specific question of the forensic examiner. Well, where in the record would I find what I've just described? Well, Your Honor, I was looking at the record to, and perhaps defense attorney can pick that up on rebuttal and just give me the page numbers. I was looking at the record in terms of the court's initial question as to what was the defendant's objection in terms of whether it was confrontation clause or whether it was an objection to... I'm asking about a government objection based on attempted cross of the agent. Your Honor, I don't have that record site because that was out of my review, Your Honor. Can I make a suggestion or a question? I'm a little confused as to which agent we're talking about. There was one agent testified about what Gonzales said. One agent testified about what the girl said, about what one of the girls said. Yes. So my understanding was that the, and maybe I'm wrong in this, I'll check it, ask for supplemental briefing to clarify on this point. But I thought that the situation where there was a government objection to the scope of the cross about inconsistent statements related to the agent who was testifying about what Gonzales himself had said, and that was questioned, what else did he say or so on? You know if I'm right on that or... Your Honor, I believe that there was an objection and the difficulty, Your Honor, in terms of in reading in how this was presented in the defendant's brief was that the objection was that the defendant was eliciting statements from the defendant that were, I guess, described as self-serving but they would no longer be elicited as a party opponent's In other words, the confession of the defendant was elicited by the government under the party opponent confession or statement, non-hearsay yet, to elicit that same statement, different statements would be objectionable. My question was whether the request for cross on additional statements related to the testimony about what Gonzales had said or related to testimony about what one of the victims had said. I don't recall specifically, Your Honor. I can follow up with briefing on that. I know that Agent Benedetti was the case agent, was the first, I believe the first witness to testify that testified to Mr. Gonzales' interview and then the forensic, FBI forensic examiner, Knapp, testified as to what KA as well as EA had said to her during forensic interview examinations. Okay. Well, we can ask for supplemental briefing on some of these issues. And we can provide that. The appellant and the appellee give us whatever detail we need. I would indicate, Your Honor, that I think it's important because it's important when it dovetails into the district court's Rule 29 of Count 4. The defendant was charged with three counts of aggravated sexual abuse and one count of plain sexual abuse, the difference being skin-to-skin touch with the aggravated sexual abuse and over-the-clothing touch. Now, the first counts, the first two counts involve victim EA. Victim EA, when that went to the jury, that was the victim in which the defendant had confessed to skin-to-skin touching. So there was evidence from a statement by the defendant against his own interest with the reliability that he had touched skin-to-skin with victim EA. Victim NB, that was not charged as aggravated or skin-to-skin touch. That was charged as what would fall into the over-the-clothing touch. Victim KA, there were two counts, 4 and Count 5. One was, Count 4 was charged as aggravated, which would have been skin-to-skin, and Count 5 was simply the abuse or over-the-clothing touch. The evidence provided in terms of skin-to-skin touch for KA, after KA had indicated that it was over-the-clothing, was the testimony from the forensic examiner as well as the doctor in terms of the medical examination. But as I understood it, the ASC count, I call it ASC count, was the only thing we had against KA, that it was reduced from the ASA count. So we didn't even have a count even when it went to the jury having to do with ASA. Absolutely, Your Honor. And in that realm, as the government pointed out, that that testimony was never able to be considered on the element of skin-to-skin touch by the jury. Therefore, if, in fact, there was error in allowing that testimony, then it was harmless or became moot by the court's rule 29-ing, in fact, basically saying that there was no evidence. But that can't be your argument as it relates to EA. In terms of EA, the difference was that the defendant himself had confessed to the skin-to-skin touch. So if the court completely disregards what the forensics examiner said, or I guess the doctor did not examine EA or did not talk about EA, but either one of those extra witnesses, if that is completely disregarded, the jury still had before it the defendant's circumstances. And in terms of, well, Your Honor, the United States is prepared to address the other issues if the court has to. Let me just say, I'm giving your friend on the panel side three minutes extra for rebuttal. So if you need more time, you can have three minutes, too. So you decide what you want to cover. Let's, Stacy, add three minutes to the talk here. But you don't need to keep talking. You don't have to use up all the time we're saying you can use. Well, Your Honor, I apologize for not being able to specifically locate the part in the record in which the court raised. My reading of the briefs did not draw that to my attention. I appreciate the opportunity to provide supplemental briefing and pinpoint the record citations to that. The United States' view is that in terms of the issues that were raised, the testimony of forensic examiner Knapp, as well as Dr. Shaw, were admissible under the theories of admissibility. The defendant didn't appear to raise an objection in saying that it didn't fall. But you've had a chance to examine that, and you've had a chance to argue it. Seems to me at that point, arguing waiver is out the door. You've got your argument in front of us. You've got the points in front of us. So you've got to make your best argument about it. You can't just talk about confrontation. I wanted him to talk about that, but he didn't. So I'm just giving it directly to you. I'm sorry, Your Honor. I agree, Your Honor. And in fact, I think that if the court raised it, and the government raised it during it, it certainly was raised in the district court. So the bottom line is that this is a discretionary call with the court. Are we on plain error review here? I think it could be plain error review. He's not going to help you. But I think, Your Honor, under the circumstances that the objection was raised, the objection was raised to hearsay, whether it was couched in terms of the confrontation clause or not. At the time, it was addressed by the court and the government in terms of a hearsay exception, an 801D. So I think that that's a fair issue to raise in this. And I think it's abuse of discretion standard, a review, rather than a plain error review on that issue. So I'll ask just a couple of questions. Is the assistant United States attorney who tried this case still with the office? Currently, the assistant is on leave. But still part of the office? Yes, Your Honor. I'm just, you know, we all make judgments about, when we're with the government, about coming to the Court of Appeals and whether to have the lawyer who tried the case or someone from, more familiar with appeals, argue the case. It seems to me that this is a case that screens out for having the lawyer who tried the case for the government present in the courtroom. Now, there may be reasons why that person cannot be here. And I'm not trying to inquire into that. But it could be that that entire colloquy that I took you through a few minutes ago could have been answered in a snap instant by somebody who actually tried the case. I agree, Your Honor. And that is our general practice in the Eastern District of Washington. And on this case, the matter was reassigned for appeal. I know that that sometimes creates a less than intimate knowledge of the case. Again, but that's what happened in this case, Your Honor. Thank you. I guess if I'm going to do this on an abuse of discretion standard, I'm having a tough time understanding how the declarant is offering a prior consistent statement that is consistent with the declarant's challenged in-court statement. I can't find it. Well, here's the, here, I mean, it seems to me there's no question what the kid said. And there's no question the agent said something different. And it makes a big difference when you're relating it to either account for ASA or ASC. And so, therefore, if I go on the kids alone, EA can't be convicted of ASA at all. And if I throw in what the agent says, then they might be. And he was convicted. So, therefore, it seems to me I got to say that's a prior consistent statement and I can't, I'm having a tough time. On an even, an abuse of discretion standard, making that so. Your Honor, I think, I believe that the key factor is that whether or not this is offered in terms of an inference of recent, of fabrication. And that's what was argued in this case. And I believe in, upon review, that's what occurred. Here's, here's the issue in terms of, okay, the, the victim took the stand. The victim was cross examined, I believe it was KA and not EA. My review is that EA was not crossed. But the two victims were crossed and asked questions that inferred a fabrication, inferred the practice. Now, would every court decide, okay, that is, in fact, an inference of fabrication? I don't know, but it's an, it's a discretionary standard. Once that's. I can get discretion on the, on the second prong, no question. That's why I ask your opponent about it. My problem is trying to give discretion to the DJ when it says, when the declarant offers a prior consistent statement. That is consistent with the declarant's challenged in-court statement. I'm having a tough time with that one on any basis. Well, the difficulty, your honor, is not that, is if it, if it's cut so fine to say that the fabrication itself. It hasn't got to be cut fine. I just got to have something that's consistent. When one says, no, not under the close, and one says, yes, under the close, that's not consistent. I can't even read it consistent. Your honor, respectfully, I believe that it's broader in terms of if the defense is questioning the witnesses, whether or not the witness has fabricated the witness's testimony, or practiced, or said things that have been suggested by the prosecution, then that door is open. When that door is open, and the, and the government calls the subsequent witness to, in terms of, in rule 801 D1B, then that subsequent witness is going to present testimony as to what the victim said. So if the fabrication is, or if the inference of fabrication is that this offense didn't happen, which is the, is the general implication, if you've practiced on the stand, then that door is open to what the defendant has said.  Now, if the witness has said something that's slightly different than what the subsequent witness says, in general terms, it is still speaking of the offense of the sexual abuse. In terms of that. Emphasizing slightly. That's true. And that's where, and that's where, why the abuse of discretion standard is more of a spectrum. Now, some court may fall differently along that spectrum, but this court fell in a, along that spectrum to that, covered that particular rule. I've gone significantly over, Your Honors. Well, thank you, and we appreciate your argument. Thank you very much. And again, if the court does wish some record sites, we can follow that up at however the court would like. Okay, the appellant. Thank you. Thank you, Your Honor. I hate to get too much into what Judge Hawkins is questioning you about, but I'm in a little bit of the same boat that Judge Gould was. It seems to me that when you were arguing there's a violation of your due process, of your client's due process rights to present a defense, you weren't arguing about the cross-examination about what other things would come out from the witness that would help you, except as to those statements made that indicate that your, that his wife caught him while touching one of the victims, and therefore, what his wife would say would make a difference. Let me address, I might be able to address your question in part by, in an attempt to point to what happened in the record. We have a pretrial motion regarding Agent Benedetti's statements that occurred on 9-9-2013, and we cited to that portion of the record in our briefing on page four of our, I think it was our amended brief. And then at trial, when there was testimony of the agent, the defense objected to the testimony based upon the pretrial motion, which was overruled, and that's in the record at 9-16-2013, page 52. So in my objection, I referred back in part to the pretrial motion. I tried to do that succinctly, to not make a speaking objection at the time of trial, and referred the court back to my pretrial motion as part of my basis, and the court denied that motion. And additionally, there is two different agents here, because I believe that the forensic interviewer who testified later in the case, what, testified that she was an agent also, and I might be incorrect about that, but I. Let me see if I can provide myself with at least a little clarification, since you were there in the courtroom when this testimony occurred. Did the following happen? An agent takes the stand and testifies as to what the victim, not your client, the victim told the agent, and then you get up on cross and ask the agent about other statements made by the victim to the agent, which may or might be inconsistent with what the agent has just said on direct. Did that happen? My recollection, it did. What's the record site? First of all, which agent is it? Benedetti? The agent was Benedetti, I believe, that testified he did the interview of him. He's the only agent to testify. There was another. But it isn't of him, it's of the victim. Judge Hawkins' questions go to the agent who is interviewing the victim and the statements the victim may have made different not to interview of the man. I thought Judge Hawkins' question was trying to clarify on the point I asked, giving my different understanding that I thought that I might be wrong, but that the inability to cross-examine the agent about other statements related to the agent who gave the admission of Gonzales, not to the one who gave the prior statement of the victim. I believe that Agent Benedetti was, in my recollection, testifying about what happened with he and Mr. Gonzales in the interview with Mr. Gonzales. I don't know if that helps or hurts, but my recollection is that Agent Benedetti was saying, when the interview occurred with Mr. Gonzales, and I wasn't allowed then to fully go into the other statements that Mr. What the judge called self-serving hearsay and didn't allow to come in. That sounds different from your response to my question when you first got up for the vote. Maybe I misunderstood the questions, but. Let me try it one more time. Did the following happen? An agent is on the stand describing what one or more of the victims told the agent during interviews that occurred before the trial. Right. You get up on cross-examination and ask the agent about other statements the victim or victims may have said that would be inconsistent with what the agent said on direct. And the district court would not let you do that. Did that happen? I believe it did, and that was. Can you give us the transcript citation? I can't give it to you right off the top of my head now. And do you raise that any place in your briefs? As to the victim? Yes. That's what I said earlier, I didn't recall. I didn't find it in your briefs. The only thing I've got is it relates to what your person, your own client would have said self-serving to an agent that you wanted in. That's the only thing I see that is raised in the briefs, not what the victims may have said. I don't see that issue in front of me. Well, I raised the agent, I think we objected to the testimony of the agent that was conflicting as to what the alleged victim said in the open courtroom and what their sworn testimony was that was inconsistent. I believe, I don't recall that Agent Benedetti testified to any interviews with the children. The Ms. Knapp, who was the forensic interviewer, and I believe also an agent, and that may be the confusion. We're way over the time, I feel a bit responsible by starting this lax time proceeding. I'm sorry. However, let me say this. I just don't feel more detail and argument from both of you. In this way, it's going to clarify this for us. So at least my voting conference, we will send a request for supplemental briefs, and each of you can be as precise as possible. OK? So thank you very much for your time. Thank you. And the case of the United States versus Cardenas-Gonzalez shall be submitted.
judges: Hawkins, Gould, Smith